UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-----------------------------------------------------------X
ALLEYNE SYLVESTER and                    :
CELESTE WENEGIEME,                       :
                            Plaintiffs,  :
                                         :
            -v-                          :        15-CV-1736 (JPO)
                                         :
                                         :        OPINION AND ORDER
BAYVIEW LOAN SERVICING LLC, *at al.*,    :
                            Defendants.  :
-----------------------------------------------------------X

J. PAUL OETKEN, District Judge:

　　Plaintiffs Alleyne Sylvester and Celeste Wenegieme, proceeding *pro se*, bring this action

against Interbay Funding, LLC, and Bayview Loan Servicing, LLC, for injuries arising out of

Defendants' foreclosure of their mortgage in state court.  Defendants now move to dismiss.  For

the following reasons, the motion is granted in part and denied in part.

**I.    Background**

　　For the purposes of this motion, the Court assumes that the facts alleged in the Amended

Complaint (Dkt. No. 3) and its attachments are true, though the Court looks outside the pleadings

to determine its jurisdiction.  *See Profeta v. Shandell, Blitz, Blitz, & Ashley, LLP*, No. 15-CV-

1054, 2015 WL 7288651, at *1 (S.D.N.Y. Nov. 16, 2015).

　　In January 2005, Alleyne Sylvester took out mortgage for property at 215 West 134th

Street in New York, New York.  (Dkt. No. 3 at 3.)  Interbay Funding, LLC, the lender, later

assigned the mortgage to Bayview Loan Servicing, LLC, and Sylvester assigned the property

encumbered by the mortgage to Wenegieme.  In early 2011, Bayview filed a foreclosure action

in New York State Supreme Court, alleging that Plaintiffs had failed to make their monthly

mortgage payments beginning in November 2010.  (Dkt. No. 15-1.)  The state court granted

summary judgment on November 21, 2012.  (Dkt. No. 15-3.)  Wenegieme then moved to dismiss

1

the state court case and to oppose summary judgment, arguing that Plaintiffs had sent payments

to Bayview that were not properly credited.  (Dkt No. 15-3.)  The state court denied that motion

on June 24, 2013, for lack of evidence and because it was brought so late.  (*Id.*)   Accordingly, it

referred the foreclosure action to a referee on July 9, 2013.  (Dkt. No. 15-4.)  On June 8, 2015,

the state court directed sale of the property.  (Dkt. No. 15-5.)  Plaintiffs report that they have

been approached by someone purporting to have purchased the property.  (Dkt. No. 19.)

On March 9, 2015, Plaintiffs filed this action.  (Dkt. No. 1.)  In their Amended

Complaint, dated April 9, 2015, they allege that Bayview "engaged in [an] illegal foreclosure

action and intimidation," by seeking foreclosure on the basis of nonpayment despite "hav[ing]

factual proof that payments were made promptly."  (Dkt. No. 3 at 3.)  They also allege that, due

to this activity, they "requested to see the 'actual note' from Interbay funding . . . and statements

of accounting," but that Defendants have not been transparent.  Finally, they allege that they

were "currently in the processes of modifying their mortgage," but Bayview proceeded with the

foreclosure action in violation of Dodd-Frank's "dual tracking" provision.  (*Id.*)  They seek

$750,000 in monetary damages, discovery as to the Note and amount owed, and loan

modification.  (*Id.* at 4.)

Defendants appeared and filed two motions for an extension of time to respond to the

Amended Complaint.  Their first letter, dated August 4, 2015, informed the court that "the

parties independently have engaged in settlement discussions and are close to resolving this

matter."  (Dkt. No. 7.)  Their second letter, dated September 3, 2015, informed the Court that the

settlement discussions had continued and that the parties "have agreed on the parameters of a

modification agreement.  The holdup is due to a potential title issue with adding a new guarantor

on the modification as Plaintiff has requested [Defendants] do."  Defendants said that they were

2

working with the title company to resolve the issue, and that they would respond to the Amended Complaint if that proved impossible.  (Dkt. No. 11.)  On October 5, 2015, Defendants filed the instant motion to dismiss.

## II.   Discussion

In all cases involving *pro se* plaintiffs, courts construe the complaint liberally and interpret the plaintiff's pleadings "to raise the strongest arguments they suggest."  *Triestman v. Fed. Bureau of Prisons*, 470 F.3d 471, 467 (2d Cir. 2006) (citation omitted).  As a general rule, "a *pro se* complaint, however inartfully pleaded, must be held to less stringent standards than formal pleadings drafted by lawyers."  *Erickson v. Pardus*, 551 U.S. 89, 94 (2007) (citation omitted).

Though Defendants characterize their motion as arising under Rule 12(b)(6) of the Federal Rules of Civil Procedure, some of their arguments are properly understood as arising under Rule 12(b)(1).  "A case is properly dismissed for lack of subject matter jurisdiction under Rule 12(b)(1) when the district courts lacks the statutory or constitutional power to adjudicate it."  *Marakova v. U.S.*, 201 F.3d 110, 113 (2d Cir. 2000).  The "failure of subject matter jurisdiction is not waivable," and "[i]f subject matter jurisdiction is lacking, the action must be dismissed."  *Lyndonville Sav. Bank & Trust Co. v. Lussier*, 211 F.3d 697, 700-01 (2d Cir. 2000).  In resolving a motion to dismiss under Rule 12(b)(1), the court "must take all uncontroverted facts in the complaint (or petition) as true, and draw all reasonable inferences in favor of the party asserting jurisdiction."  *Tandon v. Captain's Cove Marina of Bridgeport, Inc.*, 752 F.3d 239, 243 (2d Cir. 2014).  "[T]he party who invokes the Court's jurisdiction bears the burden of proof to demonstrate that subject matter jurisdiction exists . . . ."  *Germain v. M&T Bank Corp.*, 111 F. Supp. 3d 506, 518 (S.D.N.Y. 2015) (alteration and citation omitted); *see also Aurecchione*

*v. Schoolman Transp. Sys., Inc.*, 426 F.3d 635, 638 (2d Cir. 2005) ("The plaintiff bears the burden of proving subject matter jurisdiction by a preponderance of the evidence.").

To survive a motion to dismiss under Rule 12(b)(6), in contrast, "a complaint must contain sufficient factual matter . . . to state a claim to relief that is plausible on its face." *Wilson v. Merrill Lynch & Co.*, 671 F.3d 120, 128 (2d Cir. 2011) (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* (quoting *Iqbal*, 556 U.S. at 678). In determining whether this standard is satisfied, courts assume that all "factual allegations contained in the complaint" are true, *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 572 (2007), and "draw all inferences in the light most favorable to the non-moving party[]," *In re NYSE Specialists Sec. Litig.*, 503 F.3d 89, 95 (2d Cir. 2007) (Sotomayor, J.) (citation omitted).

The Court understands Plaintiffs to assert two types of claims: an argument arising under Dodd-Frank's "dual tracking" provision, and a set of state-law challenges to the district court's foreclosure decision.

### A.     Dodd-Frank Claim

Plaintiffs raise a claim of "dual tracking" under the Dodd-Frank Wall Street Reform and Consumer Protection Act. "According to the [Consumer Financial Protection Bureau], dual tracking is where a servicer moves forward with foreclosure proceedings while simultaneously working with the borrower to avoid foreclosure." *Wenegieme v. Bayview Loan Servicing*, No. 14-CV-9137, 2015 WL 2151822, at *2 (S.D.N.Y. May 7, 2015); *see* 12 C.F.R. § 1024.41(f)(2). The prohibition on dual tracking is privately enforceable under 12 C.F.R. § 1024.41(a), as

authorized by 12 U.S.C. § 2605(f).  That statute, in turn, permits borrowers to recover actual damages and costs.  *Id.*

The statute does not permit injunctive relief, *Wenegieme*, 2015 WL 2151822 at *2 n.4, so the Court construes the Amended Complaint as seeking $750,000 in damages for Defendants' alleged dual tracking.  Defendants move to dismiss solely on the ground that this claim is unripe.  As relevant here, for a case to be ripe, the plaintiff must demonstrate "that the facts alleged, under all the circumstances, show that there is a substantial controversy between parties having adverse interests, of sufficient immediacy and reality to justify judicial resolution."  *Profeta*, 2015 WL 7288651, at *2 (citation and internal quotation marks omitted); *see Nat'l Org. for Marriage, Inc. v. Walsh*, 714 F.3d 682, 687-91 (2d Cir. 2013) (describing constitutional and prudential ripeness).

To support the argument that Plaintiffs' claim is unripe, Defendants point to two cases in which courts dismissed dual tracking claims because the relevant foreclosure proceedings were still pending.  For actual damages to accrue such that a claim is ripe, these cases explain, the plaintiff must have "lost his or her property to foreclosure."  *Simmons v. Wells Fargo Bank, N.A.*, No. 14-CV-333, 2015 WL 4759441, at *4 (D.N.H. Aug. 11, 2015); *accord Wenegieme*, 2015 WL 2151822, at *2.  In those cases, the foreclosure proceedings were ongoing, so the plaintiffs had not suffered the "negative outcome" causing harm.  *Wenegieme*, 2015 WL 2151822, at *2; *see Simmons*, 2015 WL 4759441, at *2.  Here, in contrast, the court ordered a foreclosure sale in June 2015, and Plaintiffs aver that they have been approached by someone claiming to have bought the property.  (Dkt. No. 19.)  The dual-tracking injury to Plaintiffs is no longer speculative: insofar as the foreclosure proceeding continues, it proceeds only for the purpose of completing the foreclosure sale.  Plaintiffs have no hope of winning in the state court.  *Cf.*

*Wenegieme*, 2015 WL 2151822, at *2. Indeed, as discussed below, Defendants argue for abstention on the ground that the state-court judgment was rendered *before* proceedings here commenced. Accordingly, as of now, Plaintiffs' claim is ripe. *See* Wright & Miller, Fed. Prac. & Procedure § 3532.7 (citing *Hargrave v. Vermont*, 340 F.3d 27, 34 (2d Cir. 2003) (noting that "[r]ipeness should be decided on the basis of all the information available to the court," including intervening events).

Alternatively, Plaintiffs' theory of damages includes a claim for emotional distress. "Courts are split as to whether emotional distress damages are available as actual damages under 12 U.S.C. § 2605(f)(1)(A)." *Simmons*, 2015 WL 4759441, at *4; *see, e.g.*, *Catalan v. GMAC Mortg. Corp.*, 629 F.3d 676, 696 (7th Cir. 2011). Assuming they are—and Defendants make virtually no attempt to argue otherwise—those damages may accrue during the course of the foreclosure proceeding. *See* 12 C.F.R. § 1024.41(f)(2) ("If a borrower submits a complete loss mitigation application during the pre-foreclosure review process . . . a servicer shall not make *the first notice or filing* required by applicable law for any judicial or non-judicial foreclosure process . . . ."); *cf. Wenegieme*, 2015 WL 2151822, at *2 & n.3 (concluding that emotional stress damages are unavailable under the statute and finding a claim for emotional stress damages unripe). Under that theory as well, the claim would be ripe.

Defendants attack the Dodd-Frank claim through a second avenue. In their reply brief, Defendants argue that Plaintiffs' Amended Complaint fails to state a claim. In particular, they argue that that the dual-tracking provision applies only where the borrower submits a "complete loss mitigation package," but Plaintiffs never allege that they submitted such an application. "It is well established, however, that a court should not consider arguments that are raised for the

first time in a reply brief." *Mateo v. Bristow*, No. 12-CV-5052, 2013 WL 3863865, at *8

(S.D.N.Y. July 16, 2013) (internal quotation marks and citation omitted).

Even if the Court were to consider this argument, moreover, it would deny the motion to

dismiss as to this claim. As the regulation explains, the servicer may not file a foreclosure suit

and dual track "[i]f a borrower submits a complete loss mitigation application during the pre-

foreclosure review period . . . or before a servicer has made the first notice or filing" in a

foreclosure process. 12 C.F.R. § 1024.41(f)(2). A similar restriction applies if the borrower

submits such an application after the state of foreclosure proceedings but "more than 37 days

before a foreclosure sale." *Id.* § 1024.41(g). And a "complete loss mitigation application" is an

application providing a servicer "all the information that the servicer requires from a borrower in

evaluating applications for the loss mitigation options available to the borrower." *Id.*

§ 1024.41(b)(1).

Here, Plaintiffs allege in the Amended Complaint that they "are currently in the process[]

of modifying their mortgage (See Exhibit D)." (Dkt. No. 3 at 3.) Exhibit D is an email dated

February 17, 2015, from Bayview requesting certain documents from Plaintiffs. On March 2,

2015, Plaintiffs responded to that email with an "attachment." (*Id.*) While that date is after the

filing of the foreclosure action in February 2011, it undoubtedly predated the foreclosure sale by

at least 37 days. The Amended Complaint can be read to allege that Exhibit D shows "home

owner's application for loan modification." (*Id.*) The Court is also aware that over the course of

this litigation—and prior to the sale—*Defendants* notified the Court that they had agreed to the

parameters of loan modification with the Plaintiffs. Construing the Amended Complaint

liberally as befitting *pro se* filings, the Court understands Plaintiffs to allege that they submitted

a complete loan modification package in 2015 and Defendants considered it while

simultaneously seeking a judgment of foreclosure and order of sale in state court.  This states a

dual tracking claim.  The motion to dismiss for lack of jurisdiction and for failure to state a claim

is therefore denied as to this claim.

### B. State-Law Claims

Because the Amended Complaint states a federal claim, the Court has supplemental

jurisdiction over the state-law claims also contained therein.  *See* 28 U.S.C. § 1367(a).  Read

liberally, the Amended Complaint can be understood as raising two claims under New York state

law.  First, Plaintiffs allege that the foreclosure was improper both because they had met their

payment obligations and because Defendants may not have owned the underlying Note.  Second,

Plaintiffs allege that Defendants engaged in fraud and intentional infliction of emotional distress.

As remedies, they seek monetary damages and an order compelling Defendants to engage in the

loan modification process "with proper clarifications."

Defendants primarily argue that this court lacks jurisdiction under the *Rooker-Feldman*

doctrine.  "The *Rooker–Feldman* doctrine provides that federal district courts lack subject-matter

jurisdiction to review 'cases brought by state-court losers complaining of injuries caused by

state-court judgments rendered before the district court proceedings commenced and inviting

district court review and rejection of those judgments.'"  *Fernandez v. Turetsky*, , -- F. App'x ---,

2016 WL 1459244, at *1 (2d Cir. Apr. 14, 2016) (quoting *Exxon Mobil Corp. v. Saudi Basic*

*Indus. Corp.,* 544 U.S. 280, 284 (2005)); *see* Wright & Miller, Fed. Prac. & Procedure § 4469.1

(explaining that *Rooker-Feldman* displaces the "general statutes that establish original federal

subject-matter jurisdiction").  Under Second Circuit precedent, the doctrine applies when four

requirements are met: (1) "the federal-court plaintiff must have lost in state court"; (2) "the

plaintiff must complain of injuries caused by the state court judgment"; (3) "the plaintiff must

invite district court review and judgment of the state court judgment"; and (4) "the state court judgment must have been rendered before the district court proceedings commenced." *Green v. Mattingly*, 585 F.3d 97, 101 (2d Cir. 2009) (alterations, citations, and internal quotation marks omitted). The core of the doctrine is that "only the Supreme Court may review state-court decisions." *Hoblock v. Albany Cty. Bd. of Elections*, 422 F.3d 77, 85 (2d Cir. 2005).

To the extent that Plaintiffs ask this Court to reverse the foreclosure judgment, their claim cannot succeed. "Courts in this Circuit have consistently held that any attack on a judgment of foreclosure is clearly barred by the *Rooker-Feldman* doctrine." *Campbell v. Bank of N.Y. Mellon Trust Co., N.A.*, No. 11-CV-1588, 2012 WL 2952852, at *7 (S.D.N.Y. May 8, 2012), *adopted in full*, 2012 WL 2953967, at *1 (S.D.N.Y. July 18, 2012) (citation omitted). This is such a case. Put in terms of *Rooker-Feldman*'s four-part test: Plaintiffs here lost in state court. They complain of damages caused by the state court's judgment, which caused them to surrender their property under the terms of their original mortgage. To determine whether Defendants have harmed Plaintiffs, this Court would have to determine whether the foreclosure judgment was incorrect—a review of the state court's foreclosure decision that is prohibited by this doctrine. Finally, the state court's grant of summary judgment to Bayview was entered years prior to the commencement of this case.

Plaintiffs argue that *Rooker-Feldman* does not apply in this case because their foreclosure action is not complete. That means both that they are not state-court losers and that they commenced this case prior to entry of judgment against them. While the persistence of proceedings after an interlocutory state judgment "present[s] difficult questions," *Hoblock*, 422 F.3d at 89, the Second Circuit has repeatedly treated federal plaintiffs as state-court losers despite the persistence of proceedings or appeals following a dispositive state-court judgment.

9

*See Vossbrink v. Accredited Home Lenders, Inc.*, 773 F.3d 423, 426 & n.1 (2d Cir. 2014) (per curiam); *Swiatkowski v. New York*, 160 F. App'x 30, 32 (2d Cir. 2005).  And many courts in this district have concluded that final disposition in a case is sufficient to trigger *Rooker-Feldman*, notwithstanding challenges on appeal or actions in state court to enforce the judgment.  *See Greeg v. Mehiel*, No. 15-CV-6119, 2016 WL 828128, at *8 (S.D.N.Y. Feb. 24, 2016) (finding that *Rooker-Feldman* did not apply because the decision that Plaintiff would have appealed was not issued until after the federal case was filed); *Davis v. Baldwin*, No. 12-CV-6422, 2013 WL 6877560, at *4-5 (S.D.N.Y. Dec. 31, 2013); *Rottier v. Paz*, No. 12-CV-1324, 2013 WL 30686, at *5 (S.D.N.Y. Jan. 3, 2013); *see also Green v. Mattingly*, 585 F.3d 97, 103 (2d Cir. 2009) (analyzing whether a federal case invites review of a state-court order by focusing on whether the order was appealable through New York courts to the U.S. Supreme Court).

The proceedings in state court following the filing of this case merely served to execute the court's final disposition of the case.  The state court granted summary judgment against Plaintiffs in November 2012 and directed entry of judgment for the Plaintiffs in July 2013.  The original summary judgment decision indicated that the case was "disposed," rather than that the judgment was "non-final."  (Dkt. No. 15-3 at 4.)  That order of summary judgment was immediately appealable, notwithstanding the proceedings leading to the sale of the property. *Mendel Grp. Inc. v. Prince*, 114 A.D.3d 732 (N.Y. App. Div. 2d Dep't 2014) (reviewing an interlocutory grant of summary judgment in a foreclosure case); *see* Siegel, N.Y. Prac. § 526 (distinguishing appealability in the federal system from the "generosity" of the New York system).  The proceedings that remained after this case was filed in March 2015 and before the state court ordered a sale, in June 2015, consisted primarily of activity by the referee to compute the amount due.  The state court's order in June 2015 denied Plaintiffs' opposition to the

referee's report because it "essentially constitute[d] a motion for reargument" on the court's summary judgment order.  "The motion for summary judgment was granted and was settled in an order dated July 9, 2013."  Accordingly, notwithstanding the post-filing process, the state court's decision was final for *Rooker-Feldman* purposes.  To the extent that Plaintiffs challenge the foreclosure judgment and seek an injunction modifying their loan package or preventing the sale, it is an improper invitation for federal review of the state-court decision.  The motion to dismiss must be granted as to that challenge.

Second, Plaintiffs seek money damages against Defendants for fraudulently prosecuting the foreclosure action and inflicting emotional distress, whatever the outcome.  District courts in this Circuit once dismissed tort claims under *Rooker-Feldman*, understanding them as attacks on the foreclosure judgment dressed in new clothes.  *See, e.g.*, *Caldwell v. Gutman, Mintz, Baker, & Sonnenfeldt, P.C.*, 701 F. Supp. 2d 340, 348-49 (E.D.N.Y. 2010) (dismissing under *Rooker-Feldman* claims that "plaintiffs have suffered emotional and financial injury" from defendants' misconduct in pursuing foreclosure); *Campbell*, 2012 WL 2952852, at *7-8.  The Second Circuit has recently made clear, however, that a "claim of fraud may preclude the court from applying *Rooker-Feldman*."  *Barbato v. U.S. Bank Nat'l Ass'n*, No. 14-CV-2233, 2016 WL 158588, at *3 (S.D.N.Y. Jan. 12, 2016) (quoting *Babb v. Capitalsource, Inc.*, 558 F. App'x 66, 68 (2d Cir. 2015)).  In *Vossbrink v. Accredited Home Lenders, Inc.*, 773 F.3d 423 (2d Cir. 2014) (per curiam), the plaintiff alleged that the defendant had violated federal and state law in issuing and servicing his loan.  *Id.* at 426.  The Second Circuit held that *Rooker-Feldman* barred the plaintiff's fraud claims "[t]o the extent [he] asks the federal court to grant him title to his property because the foreclosure judgment was obtained fraudulently."  *Id.* at 427.  However, those claims that "seek damages from Defendants for injuries [the plaintiff] suffered from their

alleged fraud" were not barred by *Rooker-Feldman*, because their adjudication "does not require the federal court to sit in review of the state court judgment." *Id.; see id.* at 428 n.2 (collecting cases from other circuits). In a later summary order, the Second Circuit reversed a district court decision applying *Rooker-Feldman* under *Vossbrink*, explaining that "the [complaint] seeks damages for injuries suffered as a result of defendant's alleged fraud and does not attempt to reverse or undo a state court judgment." *Babb*, 588 F. App'x at 68. Such a claim falls outside the ambit of *Rooker-Feldman* because the injuries "stem[] from the same transaction but [are] not directly *caused by* the foreclosure judgment." *Gonzalez v. Deutsche Bank Trust Co.*, 632 F. App'x 32, 34 (2d Cir. 2016).

Here, construed liberally, the Amended Complaint alleges that defendants lied to the court and engaged in "intimidation," causing emotional distress to Plaintiffs for which they seek monetary damages. Understood this way, Plaintiffs do not attempt to undo the judgment of foreclosure or sale of their home. Accordingly, under *Vossbrink*, these claims are not barred by *Rooker-Feldman*. *See Fequiere v. Tribeca Lending*, No. 14-CV-812, 2016 WL 1057000, at *4 (E.D.N.Y. Mar. 11, 2016).

Defendants alternatively seek dismissal of Plaintiffs' state-law claims here, because the case proceeds in New York court. They deploy three doctrines to that end, none of which is availing. (Defendants do not argue that these claims should be dismissed under Rule 12(b)(6) or are subject to any form of claim preclusion.) The prior pending action doctrine prevents two courts from adjudicating duplicative claims, but it applies only between two overlapping *federal* suits, and in any event, the dual-tracking and tort claims here do not overlap with the foreclosure lawsuit in state court. *See Wenegieme*, 2015 WL 2151822, at *3; *see, e.g.*, *Ziemba v. Clark*, 167 F. App'x 831, 832 (2d Cir. 2006); *In re Methyl Tertiary Butyl Ether (MTBE) Products Liability*

*Litig.*, MDL No. 1358, 2015 WL 6740953, at *3 (S.D.N.Y. Nov. 4, 2015); *see generally* Wright

and Miller, Fed. Prac. & Procedure § 4247.  The prior exclusive jurisdiction doctrine prevents a

later court from exercising *in rem* jurisdiction over the same *res* as an earlier court.  *See, e.g.*,

*U.S. Specialty Ins. Co. v. A-Val Architectural Metal Corp.*, No. 15-CV-760, 2015 WL 3948115,

at *6 n.3 (S.D.N.Y. June 29, 2015).  The remaining claims here, however, are damages claims

that do not require this Court's jurisdiction over the property subject to foreclosure in state court.

Finally, *Colorado River* abstention permits the Court to decline jurisdiction in "certain

other 'exceptional circumstances.'"  *Niagara Mohawk Power Corp. v. Hudson River-Black River

Regulating Dist.*, 673 F.3d 84, 100 (2d Cir. 2012) (quoting *Colorado River Water Conservation

Dist. v. U.S.*, 424 U.S. 800, 813 (1976)).  To determine whether abstention under *Colorado River*

is appropriate, courts consider six factors, "with the balance heavily weighted in favor of

jurisdiction":

> (1) whether the controversy involves a res over which one of the
> courts has assumed jurisdiction; (2) whether the federal forum is
> less inconvenient than the other for the parties; (3) whether staying
> or dismissing the federal action will avoid piecemeal litigation; (4)
> the order in which the actions were filed, and whether proceedings
> have advanced more in one forum than in the other; (5) whether
> federal law provides the rule of decision; and (6) whether the state
> procedures are adequate to protect the plaintiff's federal rights.

*Id.* at 100-01 (citation omitted).

Defendants are correct that virtually all of these factors weigh in favor of abstention with

regard to Plaintiffs' challenge to the foreclosure judgment.  Accordingly, if *Rooker-Feldman* did

not apply here, the Court would nonetheless abstain under *Colorado River*.  *See Wengieme*, 2015

WL 2151822, at *3 (reaching the same result).  However, such abstention is inappropriate for

Plaintiffs' tort claims.  Those claims are not part of the state-court litigation and would not

necessarily be disposed of there.  *See Niagara*, 673 F.3d at 100 (explaining that *Colorado River*

abstention applies in cases involving "parallel state-court litigation that could result in comprehensive disposition of litigation"); *see also Frydman v. Verschleiser*, No. 14-CV-5903, 2016 WL 1128203, at *5 (S.D.N.Y. Mar. 22, 2016) ("Proceedings in state and federal court are 'parallel' for purposes of abstention when the two proceedings are essentially the same; that is, there is an identity of parties, and the issues and relief sought are the same." (citation and internal quotation marks omitted)). And in any event, the factors do not weigh in favor of abstention as to those claims. *See id.* at 100-04.

The motion to dismiss is therefore granted with respect to Plaintiffs' claims insofar as they seek an injunction or seek to undo the state court's foreclosure proceeding. Plaintiffs may proceed, however, with their tort claims.

### III.   Conclusion

For the foregoing reasons, Defendants' motion to dismiss is GRANTED in part and DENIED in part. The Clerk of Court is directed to close the motion at docket number 13. Defendants shall file an Answer to the remaining claims within 21 days of the date of this Order.


SO ORDERED.


Dated: June 24, 2016
        New York, New York

_____
                J. PAUL OETKEN
                United States District Judge


COPY MAILED TO PRO SE PARTIES BY CHAMBERS