UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

ALLEYNE SYLVESTER, *et al.*,
                Plaintiffs,

-v-

INTERBAY FUNDING LLC, *et al.*,
                Defendants.

15-CV-1736 (JPO)

OPINION AND ORDER

J. PAUL OETKEN, District Judge:

Plaintiffs Alleyne Sylvester and Celeste Wenegieme (collectively, "Plaintiffs"), proceeding *pro se*, bring this action against Interbay Funding, LLC ("Interbay") and Bayview Loan Servicing, LLC ("Bayview") (collectively, "Defendants") for injuries arising out of a mortgage foreclosure. Before the Court are two motions: Plaintiffs' motion to join an additional defendant, and Defendants' motion for summary judgment. For the reasons that follow, Plaintiffs' motion is denied, and Defendants' motion is granted.

I. **Background**

Familiarity with this dispute is presumed, and the facts of the case are detailed in the Court's prior opinion at the motion-to-dismiss stage. *See Sylvester v. Bayview Loan Servicing LLC*, No. 15 Civ. 1736, 2016 WL 3566234, at *1 (S.D.N.Y. June 24, 2016). The following facts are undisputed unless otherwise noted.

On January 18, 2005, Alleyne Sylvester took out a mortgage loan in the amount of $476,000 from Interbay. (Dkt. No. 48-1; Dkt. No. 62 ¶ 1 ("Pls. 56.1 Stmt.").) The loan was secured by the property located at 215 West 134th Street, New York, New York. (Dkt. No. 48-2; Dkt. No. 3 at 3 ("Compl.").) Sylvester subsequently transferred the deed to the property to Celeste Wenegieme on June 15, 2005. (Compl. Ex. A; Pls. 56.1 Stmt. ¶ 5.)

1

On January 18, 2011, Bayview commenced a foreclosure action in the Supreme Court of New York against Plaintiffs.[1] (Dkt. No. 47-1.) The New York Supreme Court granted summary judgment to Bayview on November 21, 2012. (Dkt. No. 15-3.) The Plaintiffs later moved to dismiss the action, alleging that they had sent mortgage payments to Bayview that it failed to credit, but the state court denied the motion for lack of evidence and untimeliness on June 24, 2013. (Dkt. No. 47-3.) The court referred the foreclosure action to a referee on July 9, 2013 (Dkt. No. 47-4), and confirmed the referee's report and directed sale on June 8, 2015 (Dkt. No. 47-5).

Plaintiffs filed this action on March 9, 2015 (*see* Dkt. No. 1), and filed their Amended Complaint (the "Complaint") on April 9, 2015 (*see* Compl.). At the time Plaintiffs filed this action, Bayview was in the process of reviewing Sylvester for a loan modification. Defendants claim that Bayview offered Sylvester the modification on April 29, 2015, but that Sylvester "failed to honor the terms of the . . . modification agreement and instead insisted that . . . Wenegieme be . . . added as guarantor of the loan." (Dkt. No. 48 ¶¶ 13–15 ("Trueba Aff."); *see also* Dkt. No. 48-8.) Defendants later sold their interest in the mortgage to an entity called Goldstein Group Holding, Inc. (the "Goldstein Group"), as memorialized by a Corporate Assignment of Mortgage dated March 15, 2016. (Trueba Aff. ¶ 17; Dkt. No. 48-9.)

Plaintiffs' version of the story is different. They note that on September 3, 2015, counsel for Defendants requested an extension of time to answer the Complaint, representing to the Court that the parties "have agreed on the parameters of a modification agreement" but that they were

---

[1] At some point after making the loan, Interbay assigned the mortgage to Bayview. Plaintiffs argue that the assignment to Bayview was invalid. (*See, e.g.*, Pls. 56.1 Stmt. ¶¶ 2–3, 26.) This dispute is not material, however, because the Court has already dismissed all of Plaintiffs' claims relating to the validity of the foreclosure action. *See Sylvester*, 2016 WL 3566234, at *4–5.

working out a "holdup . . . due to a potential title issue with adding a new guarantor on the modification as [Sylvester] has requested to do." (Dkt. No. 11 at 1; *see also* Dkt. No. 53 at 10.) Plaintiffs state that without notifying them, "Bayview . . . sold the property while [their] attorney informed [Sylvester] they were trying to resolve the title issue." (Pls. 56.1 Stmt. ¶ 25.)

In the midst of all of this, Defendants moved to dismiss the Complaint. (*See* Dkt. No. 13.) As compelled by the *Rooker-Feldman* doctrine, the Court dismissed all claims challenging the foreclosure action itself. *See Sylvester*, 2016 WL 3566234, at *4–5. The Court did, however, allow two of Plaintiffs' claims to go forward: (1) a claim alleging violation of the "dual-tracking" prohibition in the Dodd-Frank Wall Street Reform and Consumer Protection Act ("Dodd-Frank"), *see id.* at *2–4, and (2) a state-law tort claim "for fraudulently prosecuting the foreclosure action and inflicting emotional distress," *id.* at *6.

At least this much is beyond dispute: The property was eventually sold.[2] After the state court entered a judgment of foreclosure and sale on August 2, 2016 (*see* Dkt. No. 47-6), the referee reported the sale on September 7, 2016 (Dkt. No. 47-7).

Now before the Court are two motions. First, Plaintiffs move to join Michael Goldstein, owner of the Goldstein Group, in the action. (Dkt. No. 27.) Second, Defendants move for summary judgment on all claims asserted by Plaintiffs. (Dkt. No. 46.)

---

[2] Defendants contend that *Bayview* never sold the property, but that the sale was the Goldstein Group's doing. (*See* Dkt. No. 49 ¶¶ 26–28.) Plaintiffs respond that "Bayview had no right to sell the [m]ortgage [and] [n]ote" because Bayview never properly acquired the note from Interbay. (Pls. 56.1 Stmt. ¶ 26.) Again, this dispute is not material because the Court has dismissed all claims challenging the foreclosure itself. *See Sylvester*, 2016 WL 3566234, at *4–5.

## II. Motion to Join Michael Goldstein

Plaintiffs have moved "to include Mr. Michael Goldstein as a party of this civil lawsuit." (Dkt. No. 27 at 1.) Plaintiffs' brief appears to rely on Federal Rule of Civil Procedure 19—the rule for mandatory joinder. (*See* Dkt. No. 33 at 1.) However, following the dictate that "[a] document filed *pro se* is 'to be liberally construed,'" *Erickson v. Pardus*, 551 U.S. 89, 94 (2007) (quoting *Estelle v. Gamble*, 429 U.S. 97, 106 (1976)), the Court construes Plaintiffs' motion as a request to join Michael Goldstein and/or the Goldstein Group pursuant to either Federal Rule of Civil Procedure 19 (required joinder) or Rule 20 (permissive joinder).

Joinder of another person under Rule 19 is required where "in that person's absence, the court cannot accord complete relief among existing parties," or where that person's absence may "impair or impede the person's ability to protect [an] interest [relating to the subject of the action]" or "leave an existing party subject to a substantial risk of incurring double, multiple, or otherwise inconsistent obligations." Fed. R. Civ. P. 19(a); *see also ConnTech Dev. Co. v. Univ. of Conn. Educ. Properties, Inc.*, 102 F.3d 677, 681 (2d Cir. 1996).

Plaintiffs fail to meet the requirements of Rule 19. The only claims remaining before the Court relate to Interbay's and Bayview's conduct before and during the foreclosure proceeding, *not* to the validity of the foreclosure itself. *See Sylvester*, 2016 WL 3566234, at *4–5. And because Dodd-Frank's dual-tracking provision does not permit injunctive relief, *see Sylvester*, 2016 WL 3566234, at *3, the best that Plaintiffs can hope for is monetary damages against Defendants. As such, Goldstein's presence is not "necessary to accord complete relief" to Plaintiffs, Fed R. Civ. P. 19(a), because Goldstein does not own (and did not sell) anything that Plaintiffs could possibly recover.

Joinder of defendants under Rule 20 is permitted if "any right to relief is asserted against them jointly, severally, or in the alternative with respect to or arising out of the same transaction,

4

occurrence, or series of transactions or occurrences" and "any question of law or fact common to all defendants will arise in the action." Fed. R. Civ. P. 20(a)(2). In applying Rule 20, courts must "look to the logical relationship between the claims and determine 'whether the essential facts of the various claims are so logically connected that considerations of judicial economy and fairness dictate that all the issues be resolved in one lawsuit.'" *Kalie v. Bank of Am. Corp.*, 297 F.R.D. 552, 557 (S.D.N.Y. 2013) (quoting *United States v. Aquavella*, 615 F.2d 12, 22 (2d Cir. 1979)).

Plaintiffs' motion also fails under Rule 20. Goldstein—whose group acquired the mortgage almost a full year after the Complaint was filed—is not accused of participating in any way in Defendants' alleged dual tracking or tortious conduct. Thus, to the extent that Plaintiffs may have stated some claim for relief against Goldstein, any such claim is logically distinct from the allegations against Defendants. As a result, "considerations of judicial economy and fairness" do not counsel in favor of joining Goldstein. *See id.*

Plaintiffs' motion to join Michael Goldstein is therefore denied.

### III. Motion for Summary Judgment

#### A. Legal Standard

"The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *see also Sledge v. Kooi*, 564 F.3d 105, 108 (2d Cir. 2009) ("Summary judgment is warranted when, after construing the evidence in the light most favorable to the nonmoving party and drawing all reasonable inferences in its favor, there is no genuine issue as to any material fact."). "A fact is material when it might affect the outcome of the suit under governing law." *Gorham-DiMaggio v. Countrywide Home Loans, Inc.*, 421 F. App'x 97, 101 (2d Cir. 2011) (quoting *McCarthy v. Dun & Bradstreet Corp.*, 482 F.3d 184, 202 (2d Cir. 2007)) (internal

quotation marks omitted). And a dispute "is 'genuine' . . . if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).

"The moving party bears the initial burden of demonstrating 'the absence of a genuine issue of material fact.'" *F.D.I.C. v. Great Am. Ins. Co.*, 607 F.3d 288, 292 (2d Cir. 2010) (quoting *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986)). Once this burden is met, "the opposing party must come forward with specific evidence demonstrating the existence of a genuine dispute of material fact." *Id.* (citing *Anderson*, 477 U.S. at 249). "A party asserting that a fact cannot be or is genuinely disputed must support the assertion" either by "citing to particular parts of materials in the record" or by "showing that the materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact." Fed. R. Civ. P. 56(c)(1).

"All evidence submitted on the motion is to be construed in the manner most favorable to the nonmoving party." *Okin v. Vill. of Cornwall-On-Hudson Police Dep't*, 577 F.3d 415, 427 (2d Cir. 2009) (quoting *Horvath v. Westport Library Ass'n*, 362 F.3d 147, 151 (2d Cir. 2004)) (internal quotation mark omitted). However, "[t]o defeat a summary judgment motion, the non-moving party 'must do more than simply show that there is some metaphysical doubt as to the material facts,' and 'may not rely on conclusory allegations or unsubstantiated speculation.'" *Great Am. Ins. Co.*, 607 F.3d at 292 (citations omitted) (first quoting *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986), then quoting *Scotto v. Almenas*, 143 F.3d 105, 114 (2d Cir. 1998)).

B. **Discussion**

1. **Federal Dual-Tracking Claim**

Plaintiffs' first claim alleges that Defendants violated Dodd-Frank's prohibition on dual tracking. "According to the [Consumer Financial Protection Bureau ('CFPB')], dual tracking is where a servicer moves forward with foreclosure proceedings while simultaneously working with the borrower to avoid foreclosure." *Wenegieme v. Bayview Loan Servicing*, No. 14 Civ. 9137, 2015 WL 2151822, at *2 (S.D.N.Y. May 7, 2015). CFPB regulations prevent a servicer—within certain windows of time and subject to certain exceptions—from (1) "mak[ing] the first notice or filing required by applicable law for any judicial or non-judicial foreclosure process," or (2) "mov[ing] for foreclosure judgment or order of sale, or conduct[ing] a foreclosure sale," after receiving "a complete loss mitigation application" from the borrower. 12 C.F.R. § 1024.41(f)–(g).

The dual-tracking regulation covers only personal loans. *See Royal Host Realty, LLC v. 793 Ninth Ave. Realty, LLC*, 192 F. Supp. 3d 348, 355 (S.D.N.Y. 2016). The prohibition on dual tracking is privately enforceable under 12 C.F.R. § 1024.41(a), which states that "[a] borrower may enforce the provisions of this section pursuant to section 6(f) of RESPA"—the Real Estate Settlement Procedures Act of 1974, 12 U.S.C. § 2601 *et seq.* RESPA does not apply to "[b]usiness purpose loans," 12 C.F.R. § 1024.5(a)–(b), which are defined as "extension[s] of credit primarily for a business, commercial, or agricultural purpose, as defined by 12 CFR 1026.3(a)(1) of Regulation Z." *Id.* § 1024.5(b)(2); *see also* 12 U.S.C. § 2606(a) ("This chapter does not apply to credit transactions involving extensions of credit . . . primarily for business, commercial, or agricultural purposes . . . ."). Like § 1024.5, Regulation Z defines "[b]usiness,

7

commercial, agricultural, or organizational credit" as "[a]n extension of credit primarily for a business, commercial or agricultural purpose." 12 C.F.R. § 1026.3(a).[3]

"The party asserting a violation of RESPA . . . bears the burden of showing that the loan in question was obtained for personal, as opposed to business purposes, bringing it within the purview of the statute[]." *Royal Host Realty*, 192 F. Supp. 3d at 356. In determining whether a loan was for a business or personal purpose, "the emphasis should be on the purpose of the transaction and not the categorization of the properties used to secure the loan." *Id.* (quoting *Galindo v. Financo Fin., Inc.*, No. 07 Civ. 03991, 2008 WL 4452344, at *4 (N.D. Cal. Oct. 3, 2008)).

All evidence points to the conclusion that the foreclosed property is a multi-unit building, which Plaintiffs bought for the purpose of generating income. First, the property at issue is a building that could accommodate multiple tenants. The official mortgage and deed documents indicate that the building is a "DWELLING ONLY – 6 FAMILY." (Compl. Ex. A; Dkt. No. 48-2.) Plaintiffs dispute Defendants' contention that the property is "a building with six units" (Dkt. No. 49 ¶ 6), somewhat confusingly responding that it is a "1-2 family with 6 units" (Pls. 56.1 Stmt. ¶ 6). Plaintiffs rely on a mortgage assignment document that describes the property as "1-2 FAM WITH ATTCH GAR / OR VACANT LAND." (Dkt. No. 53 Ex. A; Dkt. No. 53 at 2.) In any event, the parties agree that, at minimum, the property could accommodate two families.

Second, the loan application indicates that the property was not intended to be a primary or secondary residence and that it was expected to generate "positive cash flow." (Trueba Aff.

---

[3] In other respects, Regulation Z is the implementing regulation for the Truth in Lending Act (TILA), 15 U.S.C. 1601 *et seq.*, not RESPA. However, 12 C.F.R. § 1024.5 directs that, for the purposes of defining business purpose loans under RESPA, "[p]ersons may rely on Regulation Z in determining whether the exemption applies."

8

¶ 8; Dkt. No. 48-3.) Due to the poor quality of the scanned image of the loan application, it is impossible to verify Defendants' claim that the application states "that the Property was an Investment Property to be used for investment purposes." (Dkt. No. 49 ¶ 7.) That said, Plaintiffs' only response to Defendants' claim is that Bayview is not the holder of the mortgage so "details of the mortgage cannot be analyzed." (Pls. 56.1 Stmt. ¶ 7.) This claim is non-responsive.

Third, Sylvester signed an Affidavit of Commercial Property Use, which states that the "property use will be" as an "investment property." (Trueba Aff. ¶ 9; Dkt. No. 48-4.) The document avers that the property would "not [be] owner operated" and that it was "purchased as an investment to be held or rented to a third party." (Dkt. No. 48-4.) Again, Plaintiffs' only retort is the non-responsive assertion that "details of the mortgage cannot be analyzed." (Pls. 56.1 Stmt. ¶¶ 8–9.)

Finally, Sylvester provided Interbay with an Assignment of Leases and Rents at closing. (Trueba Aff. ¶ 10; Dkt. No. 48-5.) This document similarly describes the property as a "DWELLING ONLY – 6 FAMILY" and assigns "[a]ll existing and future leases" and "[a]ll rents, additional rents, revenues, income, issues and profits . . . , deposits, accounts and other benefits arising from" the property to Interbay. (Dkt. No. 48-5 at 1–2.) Plaintiffs again respond only that "details of the mortgage cannot be analyzed." (Pls. 56.1 Stmt. ¶ 10.)

Defendants have met their initial burden to demonstrate the absence of a genuine dispute over the business purpose of the loan. The burden then shifts to Plaintiffs to "come forward with specific evidence demonstrating the existence of a genuine dispute of material fact." *Great Am. Ins. Co.*, 607 F.3d at 292 (quoting *Anderson*, 477 U.S. at 249). Plaintiffs offer only one response, citing a "Certified Forensic Loan Auditors report" (the "CFLA Report") for the

proposition that the loan was "a conventional loan," so it could not be a commercial loan. (Dkt. No. 53 at 6.)

Assuming (but not deciding) that the CFLA Report has legitimate evidentiary value,[4] the Court is persuaded by Defendants' two responses. First, a "conventional" loan may also be a "commercial loan," so the CFLA Report's "conventional" label does nothing to disprove the commercial nature of the mortgage. Second, the CFLA Report indicates that Sylvester's mortgage note was placed into a trust "consist[ing] of a pool of first lien, fixed rate and adjustable rate commercial real estate loans." (Dkt. No. 53 Ex. L at 23.) Thus, the CFLA Report does not raise a genuine dispute of material fact.

The Court notes—although the Plaintiffs do not rely on this piece of evidence—that the record contains a declaration stating that "Celeste Wenegieme has been paying the mortgage and residing in the property" since 2005. (Dkt. No. 53 at 3.) However, "[l]oans obtained to gain a profit and those for investment in non-owner occupie[d] rental properties are loans for business purposes." *Muia v. Brookview Rehab Funding*, No. 10 Civ. 1315, 2011 WL 1748190, at *2 (N.D.N.Y. May 5, 2011). Wenegieme was never a party to the mortgage. (Trueba Aff. ¶ 11; Dkt. No. 48-1; Dkt. No. 48-6.) And she has no family relationship to Sylvester; Wenegieme describes Sylvester only as her "business partner." (Dkt. No. 53 at 2.)

Even if the Court considered the property to be owner-occupied, that would not change its conclusion. Owner-occupied rental properties are business endeavors when the building is large enough or the commercial nature of the enterprise is clear based on a number of factors.

---

[4] The Court notes that many other courts, along with the Federal Trade Commission, regard these so-called certified forensic audits with skepticism. *See, e.g., Hanson v. Wells Fargo Bank N.A.*, No. 10 Civ. 1948, 2011 WL 2144836, at *3 (W.D. Wash. May 26, 2011). Nonetheless, on a motion for summary judgment, the Court is bound to view the evidence in the light most favorable to the nonmoving party.

*See Friedman v. Maspeth Fed. Loan & Sav. Ass'n*, 30 F. Supp. 3d 183, 190–91 (E.D.N.Y. 2014). Given Sylvester's undisputed statements about the purpose for the loan (*see* Dkt. Nos. 48-2 to 48-5), the Court concludes that Sylvester's mortgage was a business-purpose loan even if Wenegieme lived in the property while the deed was in her name. "In determining whether the loan at issue is subject to the requirements of RESPA, the relevant question is the purpose for which the mortgage loan was made," not "the purpose for which the property is being used on the date of the alleged RESPA violations." *Barrett v. Green Tree Servicing, LLC*, No. 14 Civ. 297, 2014 WL 6809203, at *3 (S.D. Ohio Dec. 2, 2014).

As such, no reasonable factfinder could conclude that Plaintiffs have met their burden to show "that the loan in question was obtained for personal, as opposed to business purposes." *Royal Host Realty*, 192 F. Supp. 3d at 356. Because business-purpose mortgages are exempt from RESPA, Defendants are entitled to summary judgment as to the entirety of Plaintiffs' dual-tracking claim.

### 2. State-Law Tort Claim

At the motion-to-dismiss stage, the Court construed the Complaint liberally in favor of the *pro se* Plaintiffs "to raise the strongest arguments they suggest." *Sylvester*, 2016 WL 3566234, at *2 (quoting *Triestman v. Fed. Bureau of Prisons*, 470 F.3d 471, 467 (2d Cir. 2006)) (internal quotation marks omitted). Applying this standard, the Court explained that "the Amended Complaint can be understood as raising" a claim that "Defendants engaged in fraud and intentional infliction of emotional distress." *Sylvester*, 2016 WL 3566234, at *4.

But now the bar is higher. While still abiding by the "policy of liberally construing *pro se* submissions," *Triestman*, 470 F.3d at 475, the Court must now consider not whether Plaintiffs have plausibly stated a claim for relief, but instead whether they have raised a genuine dispute of material fact. "[W]ith a motion for summary judgment adequately supported by affidavits, the

party opposing the motion cannot rely on allegations in the complaint, but must counter the movant's affidavits with specific facts showing the existence of genuine issues warranting a trial." *McKenna v. Wright*, 386 F.3d 432, 436 (2d Cir. 2004). The Court concludes that Plaintiffs have failed to meet this "more probing test" for summary judgment. *Employees' Ret. Sys. of Gov't of the Virgin Islands v. Blanford*, 794 F.3d 297, 306 (2d Cir. 2015).

To prove at trial a claim for either fraud or intentional infliction of emotional distress, Plaintiffs would need to show that Defendants did not have a legal right to the foreclosure. *See Mid Atl. Framing, LLC v. Varish Const., Inc.*, 117 F. Supp. 3d 145, 151 (N.D.N.Y. 2015) (explaining that the elements of New York common-law fraud include a showing that "the defendant made a material false representation" and that "the defendant intended to defraud the plaintiff thereby"); *Turley v. ISG Lackawanna, Inc.*, 774 F.3d 140, 157 (2d Cir. 2014) (holding that an element of the tort of intentional infliction of emotional distress is that "defendant engag[ed] in 'extreme and outrageous conduct, which so transcends the bounds of decency as to be regarded as atrocious and intolerable in a civilized society'" (quoting *Freihofer v. Hearst Corp.*, 480 N.E.2d 349, 355 (N.Y. 1985))).

In support of their motion for summary judgment, Defendants point to New York state court proceedings that confirm the validity of the foreclosure proceeding against Sylvester. (*See* Dkt. Nos. 47, 47-1 to 47-7.) This satisfies Defendants' initial burden to demonstrate the absence of a genuine dispute over Defendants' right to pursue the foreclosure and the non-fraudulent nature of their conduct in the state court action.

In response, Plaintiffs make only sweeping allegations of generalized malfeasance. (*See, e.g.*, Dkt. No. 53 at 13 (alleging that "[Defendants] are a bunch of criminals who are fraudulently ripping off home owner[s] and claiming to own mortgages which are not there and . . . selling

fake mortgage assignment notes"); Dkt. No. 61 at 10 (alleging that "Bayview violated the plaintiff[s'] rights [and] as such caused emotional pains and financial loss to the plaintiffs").) Even liberally construed in the manner most favorable to Plaintiffs, these statements amount to nothing more than "conclusory allegations" and "unsubstantiated speculation." *See Great Am. Ins. Co.*, 607 F.3d at 292 (quoting *Scotto*, 143 F.3d at 114). Such statements are insufficient to carry Plaintiffs' burden to "cit[e] to particular parts of materials in the record" or "show[] that the materials cited [by Defendants] do not establish the absence . . . a genuine dispute." Fed. R. Civ. P. 56(c)(1).

Defendants are therefore entitled to summary judgment as to Plaintiffs' state-law tort claim.

### 3. Plaintiffs' Request for Additional Discovery

Finally, Plaintiffs ask the Court to deny summary judgment and grant them an extension of time to complete fact discovery.[5] (Dkt. No. 51 at 2.) Rule 56(d) states that "[i]f a nonmovant shows by affidavit or declaration that, for specified reasons, it cannot present facts essential to justify its opposition, the court may: (1) defer considering the motion or deny it; (2) allow time to obtain affidavits or declarations or to take discovery; or (3) issue any other appropriate order." Fed. R. Civ. P. 56(d).

---

[5] The parties dispute whether Plaintiffs ever served Defendants with discovery demands. Plaintiffs claim that Defendants have "refused to comply with requested and required production of documentation, interrogatory demands, and depositions." (Dkt. No. 51 at 1.) Defendants respond that "Plaintiffs neither served discovery demands nor requested depositions in the five plus months since the scheduling order was entered." (Dkt. No. 52 at 6.) It appears that Plaintiffs may have sent discovery demands to the Court (*see* Dkt. No. 53 Ex. Q) but failed to take further action when the document was returned to sender. In any event, one thing is clear: The period for fact discovery ended on February 28, 2017. (Dkt. No. 26.) The time for resolving discovery disputes has long passed, and the question now is whether summary judgment is appropriate based on the available record.

13

Plaintiffs have failed to file the requisite affidavit to support their request. In the Second Circuit, a party opposing a motion for summary judgment on the basis of inadequate discovery "must file an affidavit describing: (1) what facts are sought and how they are to be obtained; (2) how these facts are reasonably expected to raise a genuine issue of material fact; (3) what efforts the affiant has made to obtain them; and (4) why the affiant's efforts were unsuccessful." *Gualandi v. Adams*, 385 F.3d 236, 244 (2d Cir. 2004). "A reference to [Rule 56(d)] and to the need for additional discovery in a memorandum of law in opposition to a motion for summary judgment is not an adequate substitute for a [Rule 56(d)] affidavit, and the failure to file an affidavit . . . is itself sufficient grounds to reject a claim that the opportunity for discovery was inadequate." *Paddington Partners v. Bouchard*, 34 F.3d 1132, 1137 (2d Cir. 1994) (citations omitted).

However, in consideration of Plaintiffs' *pro se* status, the Court will construe their responsive briefing as a Rule 56(d) affidavit. Even so, their submission is insufficient. The Plaintiffs fail to describe with any specificity what facts they seek to discover and how they would do so. *See Vega v. Rell*, 611 F. App'x 22, 26 (2d Cir. 2015) (rejecting a *pro se* party's "assertion that summary judgment was premature due to incomplete discovery" because he did not identify "any specific discoverable information he hoped to obtain by his discovery requests that would have raised a material issue of fact"); *In re Dana Corp.*, 574 F.3d 129, 148–49 (2d Cir. 2009) ("A court plainly has discretion to reject a request for discovery if the evidence sought would be cumulative or if the request is based only on 'speculation as to what potentially could be discovered' . . . ." (quoting *Paddington Partners*, 34 F.3d at 1138)). "At bottom, a party may not use Rule 56(d) as a means of finding out whether it has a case." *DePaola v. City of New York*, 586 F. App'x 70, 71 (2d Cir. 2014).

14

Accordingly, Plaintiffs' request for an extension of time to conduct fact discovery is denied.

## IV. Conclusion

For the foregoing reasons, Plaintiffs' motion to join Michael Goldstein is DENIED, and Defendants' motion for summary judgment is GRANTED. Judgment shall be entered in favor of Defendants on all claims.

The Clerk of Court is directed to close the motions at Docket Numbers 27 and 46 and to close this case.

SO ORDERED.

Dated: September 29, 2017
       New York, New York

_____
J. PAUL OETKEN
United States District Judge

*COPY MAILED TO PRO SE PARTIES BY CHAMBERS*